## PARSONS *et al. v.* PREY.

1. Section 1696 of the Political Code does not authorize any person, in his capacity as a private citizen, to object to the granting of a lease of territory for planting and cultivating oysters, on the ground that the applicant for the lease has not taken the proper preliminary steps for obtaining the same; nor does that section confer upon one claiming as owner the right to set up, in resistance to the granting of the lease, the contention that the territory in question is not, because of its being his private property, a proper subject-matter of the lease applied for.

2. The evidence in the present case fully warranted a finding that the caveator, who claimed that he had planted the territory in controversy before the lease was applied for, had not in fact done so.

Submitted May 1,—Decided July 19, 1902.

Certiorari. Before Judge Seabrook. Chatham superior court. December 13, 1901.

*W. W. Gordon Jr.* and *Osborne & Lawrence*, for plaintiffs in error. *George W. Beckett* and *George T. Cann*, contra.

LUMPKIN, P. J.   The defendant in error, Emanuel Prey, presented to the commissioners of Chatham county an application for a lease of certain territory upon which to plant and cultivate oysters. This application was based upon section 1696 et seq. of the Political Code. George Parsons appeared before the commissioners and filed a caveat to the granting of Prey's application. Subsequently Augustus Oemler united with Parsons in filing an amendment to his original caveat. In this amendment it was alleged that " the said George Parsons has already planted such ground within said county and State, and if any lease is granted at all, he is entitled to a preference in obtaining the lease of such ground, and he hereby applies for such lease." A hearing was had before the commissioners, at which much evidence was introduced on both sides, and at the conclusion thereof the commissioners passed an order granting Prey's application for a lease. Thereupon Parsons and Oemler presented to the superior court a petition for certiorari, which was overruled, and they excepted.

1. In the pleadings filed by Parsons and Oemler they set forth divers reasons why Prey's application should not be granted, one of which was that he had not complied with the provisions of the statute with respect to staking off the territory he sought to lease. They also relied on certain allegations of fact which, if true, showed

that this territory was not, under the law, subject to lease. Among these allegations was one to the effect that this territory was the private property of Parsons, which he had leased for a term of years to Oemler. Section 1696 of the Political Code reads as follows: "The county commissioners in any county, or, where there is no board of county commissioners, the ordinary for said county, upon the application of any person for certain territory in any of the navigable waters of this State, and within a distance of one thousand feet from the shore at ordinary mean tide, upon satisfactory proof, on hearing had before the county commissioners or the ordinary, that said territory had been duly staked off at the line of ordinary mean high water where the leased ground is opposite the public marshes of this State, and in all other cases at the line of low water, except where the consent of the adjacent land owners is obtained for the staking off at said line of high tide, for a period of thirty days before the hearing of such application, shall execute a lease for twenty years, with a privilege of renewal for thirty years more, to such applicant as may first apply for such territory, where there are no natural beds as evidenced by the survey referred to in section 1700. Any person who has already planted any ground within said county shall have the preference in obtaining the lease of such grounds, and upon application of any other person for said territory, the proper authorities for executing such leases shall give thirty days notice of such application, by posting a notice at the court-house door; and if the person who has planted oysters thereon shall make application therefor before the expiration of said thirty days, it shall be leased to him, but otherwise to the aforesaid applicant: *Provided*, that the provisions of this section shall not apply to oyster-beds staked out under laws heretofore existing, nor to territory within one hundred and twenty feet of the line of ordinary mean low tide in front of and adjoining habitable high land returned for taxation."

The notice provided for by this section was evidently designed to afford an opportunity to "any person who has already planted" territory applied for by another to resist his application for a lease thereof, and to establish by proof the former's right to "the preference in obtaining the lease" to which the statute refers. It was not, we think, in legislative contemplation that there should be, under the provisions of this section, any contest before the county

authorities with respect to the granting of leases to oyster lands, save only in the event an application for a lease should be met by a counter application filed by one claiming that he had already planted the territory covered by the pending application therefor. While the statute does declare that the county authorities shall act "upon satisfactory proof, on hearing had before" them, it embraces no provision, save as above indicated, for permitting persons objecting to the granting of a lease to appear before the county authorities and contest with an applicant his right to the lease he seeks to obtain. That is to say, the law as written does not confer upon any person, in his capacity as a private citizen, the right to object to the granting of a lease on the ground that the applicant has not taken the proper preliminary steps for obtaining the same; nor upon one claiming as owner the right to set up the contention that the territory in question is not, because of its being his private property, the proper subject-matter of the lease applied for. Beyond doubt, it was never contemplated that questions involving the title to realty should be tried and adjudicated by the tribunal created for the purpose of leasing oyster lands belonging to the State. To construe the statute as authorizing such questions to be thus passed upon would be to render it unconstitutional; for it is not within the power of the General Assembly to deprive the superior court of its exclusive jurisdiction over issues of this nature. It follows, of course, that in the present case the county commissioners were without jurisdiction to try Parsons' alleged claim of ownership to the territory sought to be leased; and therefore neither he nor Oemler are bound by any adjudication in regard thereto which the county commissioners undertook to make. In view of what is said above, we do not feel called upon to discuss any of the questions presented by the pleadings and evidence in this case, except the one with which we shall briefly deal in the next division of this opinion, it being the only one which was properly before the county commissioners for determination.

2. As has been seen, no person is entitled to a preference over an applicant for a lease, save one "who has already planted" the territory sought to be leased. It was therefore incumbent upon Parsons, in order to establish his alleged preference over Prey, to show affirmatively that he (Parsons) had in fact planted the grounds in controversy prior to the filing of Prey's application. This Par-

sons signally failed to do. The testimony disclosed that he had never himself planted, or caused to be planted, any oysters upon these grounds. Oemler testified, in general terms, as follows : " I had actual charge when the Oemler Company leased the ground in 1892, and have continued in charge ever since. At that time, in behalf of Mr. Parsons, we staked this very ground, and I had twelve or fourteen men employed for three months planting this particular territory. I have planted those grounds for the last ten years." In view of other facts appearing in the record before us, it is quite probable that this witness meant to be understood as saying merely that the lessee company, acting through its agents, " staked this very ground," in order that the precise location of the leased territory might, without expense to Parsons, be definitely settled as between him and the company for their mutual protection and benefit. The lease from Parsons to that company, which was introduced in evidence, negatives the idea that he was to have any interest in the oysters which the lessee might plant and cultivate during the term of years specified in that instrument. This being so, it is hardly likely that Oemler meant to say the oysters were planted "in behalf of Mr. Parsons" ; but granting that the testimony of this witness is susceptible of this construction, the statement made by him in this connection amounted to no more than a bare conclusion on his part, based, most probably, upon the idea that Parsons, as the owner of the grounds planted by the lessee company, would, at the termination of its lease, be entitled to any unmarketable oysters which that company might leave in the beds, and thus the planting would ultimately enure to his benefit. However this may be, the county commissioners were fully warranted in .finding that, in point of fact, Parsons never planted, either in person or by agent or employee, any oysters whatever on the grounds in controversy ; for the only other witness testifying as to this matter was one who was introduced in behalf of Parsons, and who stated positively and unequivocally that he "never planted any oysters there, but Mr. Oemler did," the facts as to what occurred being that Parsons "leased these lands to the Oemler Oyster Company for five years from May 3rd, 1892, and gave them the exclusive right to the oysters in the creeks, on the marshes and shores," warranting " his title to the company"; and that " on January 1st, 1896, [he] made a lease directly to Capt. Oemler," cov-

ering the grounds in dispute, for a period of ten years. This lease, which was admitted in evidence, purported to give to Oemler "the exclusive right to plant and gather oysters" within the territory therein specified ; so it is only fair to presume that such planting as was done subsequently to the date last mentioned was for Oemler's exclusive benefit, as lessee, and not "in behalf of Mr. Parsons," the lessor. Indeed, we are decidedly of the opinion that the evidence bearing on this branch of the controversy between Prey and Parsons demanded a finding that the latter was not, as he alleged, entitled to a preference because he had already planted the territory covered by the former's application prior to the time it was filed. Accordingly, we hold that the judge of the superior court properly overruled the petition for certiorari.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*